# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRIC OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| RYAN WATSON, ) | |
| *Acting on behalf of infant children,* ) | |
|  *G.L.W. and B.V.W.* ) | |
|      Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 8:22-CV-2613-WFJ-TGW |
| ) | |
| DANUTA WATSON, ) | |
|      Defendant. ) | |
| ) | |

## DEFENDANT'S CLOSING ARGUMENTS

Danuta Watson, ("**Defendant**") respectfully submits her written closing arguments from the evidentiary hearing held on January 18, 2023, and February 2, 2023. Ryan Watson ("**Plaintiff**") has not carried his evidentiary burden of establishing a wrongful removal or retention of the parties' children B.V.W. and G.L.W. (collectively the "**Minor Children**"). Rather, the evidence presented at trial[1] established that the parties never intended for Canada to be the habitual residence of the Minor Children and that when one looks at a fact-driven inquiry that is sensitive to the unique circumstances of this case, it is clear that the acclamation of the Minor Children is to the habitual residence in Sarasota County, Florida as well as the intentions and circumstances of the parents all point to Sarasota County as the habitual residence of the Minor Children. *See Monasky v. Taglieri*, 140 S. Ct. 719, 734 (2020). Furthermore, it was proven by clear and

---

[1] References to the documentary evidence received by the Court shall be as follows: Plaintiff's exhibits received by the Court shall be referred to as [P# ]. Defendant's exhibits received by the Court shall be referred to as [D# ].

convincing evidence that the domestic violence to which the Minor Children had been exposed, both prior to the Plaintiff's removal from the United States and during their temporary stay in Canada, supports the affirmative defense of grave risk of harm to the Minor Children. *Hague Convention*, art. 13(b), T.I.A.S. No. 11,670, at 4-5, 1343 U.N.T.S. 89, at 98-99.

The parties' actions reflected in their testimony and documentary evidence established that the Minor Children became habitual residents of the United States long before the parties' temporary stay in Canada- a temporary stay triggered by Plaintiff's criminal behavior that culminated in his removal from the United States. [D#5] [P#35]. Thus, the Plaintiff's Verified Hague Convention Petition for Return of Minor Children to Canada, (the "**Petition**") must be, DENIED.

A court faced with a Hague petition may only evaluate the Plaintiff's wrongful removal or retention claim, not any underlying custody disputes. *See Gomez v. Fuenmayor*, 812 F. 3d 1005, 1011 (11th Cir. 2016). The structure of [Article 3 of the Hague Convention] clearly establishes the proper order of inquiry: first, the court should inquire into whether there has been any removal or retention at all; and second, the court should inquire into whether such removal or retention has been wrongful. *See Pielage v. McConnell*, 516 F 3d 1282, 1287 (2008). The operative provision in the Hague Convention with respect to the "wrongful removal or retention" is Article 3, which defines removal or retention of a child as "wrongful" when:

a. it is in breach of rights of custody attributed to a person, an institution, or any other body, either jointly or alone, under the law of the State in which the child was **habitually resident** immediately before the removal or retention; and

b. at the time of the removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph a above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the laws of that State. *Hague Convention*, Art. 3. *Pielage* at 1287.

### *Minor Children's Habitual Residence Remains to be Florida, United States*

The Plaintiff failed to carry his evidentiary burden of establishing that Canada is the habitual residence of the Minor Children. Conversely, the Defendant presented uncontested documentary evidence at trial to establish that the word "**home**" means Sarasota County, Florida for the Minor Children. The Minor Children consider Sarasota County to be their habitual residence as the Minor Children's school, friends, medical doctors, therapist, social activities, and religious activities are firmly established in this area. [D# 7, 8, 14, 15, 16, 17, 22, 24, 25].

Furthermore, the Defendant provided documentary evidence at trial that supports the parties' intent for the Minor Children to enjoy continuity of schooling

by registering the Minor Children in the Bob Jones University Homeschool which follows the Florida school curriculum. Likewise, the Minor Children were never enrolled in the Canadian school system; the continuity of the Minor Children's relationship with friends from school and church prior to their temporary stay in Canada continued upon return to their habitual residence in Florida.

In addition to the Defendant's documentary evidence at trial, multiple witnesses, including the Plaintiff himself, provided unrefuted testimony supporting the fact that the Minor Children's entire childhood is rooted in the State of Florida. The testimony of Galewa Tetena, a mutual friend of the parties, who appeared in several of the pictures with the Watson family, testified that the Minor Children are truly happy in Florida to the extent that Ms. Tetena defined Florida to be the Minor Children's "forever home." Further, Ms. Tetena also testified that upon losing his nursing license, the Plaintiff tried to find any possible way to stay in the United States, including seeking employment as a construction worker, in an attempt to avoid any disruption in the Minor Children's lives in the State of Florida.

Similarly, the testimony of Canadian national, Ms. Amanda Doucette, who is also a mutual friend of the parties, established that during the Minor Children's temporary stay in Canada between 2020 and 2021, the Plaintiff considered Canada to be a temporary stay as the Watson family's ultimate objective was to move out of Canada either to Poland, Germany, or Florida.

### *Plaintiff Acquiesced to the Minor Children Remaining in the United States*

Even if this Court were to conclude that Plaintiff did not consent to the removal from Canada to the United States on November 25, 2021, the Plaintiff failed to carry his evidentiary burden of demonstrating a wrongful retention a week after the alleged removal from Canada. To the contrary, Defendant has sufficiently demonstrated that, even if the Minor Children were wrongfully removed on November 25, 2021, Plaintiff acquiesced to the Minor Children remaining in the United States past the week after the alleged removal. The evidence presented during trial established that Plaintiff acquiesced to the Minor Children remaining in the United States. The evidence is as follows:

1. The minor child, B.V.W., is a Canadian citizen and immigrated to the United States with the parties when she was just one (1) and one-half (1/2) years old. The other minor child, G.L.W., is an American citizen and is currently covered under Florida Medicaid benefits. [P#2].

2. Defendant's testimony and documentary evidence presented at trial established that initially, the Plaintiff both expressly and tacitly agreed to the return of the Minor Children to the United States on November 25, 2021, so the minor child G.LW. could attend a medical appointment, that had been previously scheduled by the parties, at the Golisano Children's Hospital for November 30, 2021. [D#7] [P#8, 26].

3.  Plaintiff's testimony at trial established that long after their return to the United States on November 25, 2021, the Plaintiff had never been denied access to the Minor Children, and in fact, he was in constant communication with them via telephone, text messaging, and videocalls. [P#27].

4.  The documentary evidence also showed that Plaintiff continued having communication with the Defendant regarding the Minor Children's ongoing dental treatment. Evidence presented at trial of email communication between the parties dated November 1, 2022, established that Plaintiff had not only consented to the return of the Minor Children to their habitual residence in the United States a year prior; but more importantly, Plaintiff fully acquiesced to the Minor Children remaining in the United States long after the alleged wrongful removal from Canada. [P#18] [D#17].

5.  Despite the alleged wrongful removal or retention of the Minor Children, the Plaintiff decided to wait 11-months and 15 days to initiate legal proceedings for the return of the Minor Children to Canada.  Plaintiff's Petition's date of filing would appear to be more of a retaliative move to the Defendant's final decision to move on with her life in the United States, as the Plaintiff initiated Hague litigation only 34 days after the Defendant had filed her Petition for Dissolution of Marriage in Lee County, Florida, on October 12, 2021. [P#12, 13, 14].

Under these circumstances, the preponderance of the evidence supports a finding that Plaintiff acquiesced to the Defendant and the Minor Children

remaining in the United States. Since there was not wrongful retention a week after the alleged wrongful removal on November 25, 2021, the Petition should be DENIED.

Next, the Defendant presented clear and convincing evidence at trial and established that the Minor Children will be at grave risk of physical and psychological harm should this Court grant for their return to Canada as the Minor Children would be placed in an intolerable environment under the care of the Plaintiff. "Other physical or psychological abuse, serious neglect, and domestic violence in the home may also constitute an obvious grave risk to the child's safety that could not readily be ameliorated." *See Golan v. Saad*, 142 S. Ct. 1880, 1894 (2022). The testimony of the Defendant as well as the testimony of the Minor Children's therapist, Ms. Robin Smith-Velazquez, LCSW, established throughout the parties' marriage, the Minor Children had witnessed multiple incidents of domestic violence perpetrated by the Plaintiff against the Defendant. [D#10, 11]. These incidents of domestic violence between the parties occurred prior to the Plaintiff's departure from the United States and during the Minor Children's temporary stay in Canada between 2021 and 2022. Due to the domestic violence between the parties, the Minor Children had suffered grave psychological and emotional harm in the way of trauma, due to the Plaintiff's abusive and violent conduct. Uncontested evidence presented at trial established that the Minor Children had engaged in therapy prior to their temporary stay in Canada and soon after their return to the United States in November 2021. The Minor Children have

engaged in therapy with Ms. Smith-Velazquez to address the harm caused by the Plaintiff's abusive behavior as well as the persistent feeling of anxiety and fear that said abuse has caused to them. [D#25]. Furthermore, the testimony of Rebekah Gritton, who recalled being on a call while the Defendant was clearly distraught due to an ongoing altercation with the Plaintiff, described her concerns for the wellbeing of the Defendant and Minor Children to be so palpable, that she facilitated a safety plan of action for the Defendant and the Minor Children to evade future incidents of domestic violence by the hand of the Plaintiff.

During his testimony at trial, Plaintiff repeatedly denied being an addict, despite an overwhelming amount of evidence proving otherwise [P#35][D#5]. Plaintiff additionally testified that he purposely stopped any sort of substance abuse treatment or counseling upon his arrival to Canada due to his lawful removal from the United States in June 2020. The pernicious relationship between untreated addiction issues and a history of domestic violence in the home does not bode well for the prognosis that the conditions that led to the domestic violence are likely to be ameliorated in Canada.

The testimony of Rene Kelly, custodian of records of the Minor Children's Florida school records, coupled with the testimony of the Defendant, established the Minor Children's unequivocal objection to being returned to Canada and that they are at an appropriate age and degree of maturity for this Court to give substantial evidentiary weight to their in-camera testimony concerning their state

and desires and their perceptions of where their habitual residence is located. [D#3].

## **CONCLUSION**

The Petition must be DENIED. Plaintiff failed to meet his evidentiary burden of establishing that the Minor Children were wrongfully removed or retained. Plaintiff expressly consented to the return of the Minor Children to the United States as Florida continues being the Minor Children's habitual residence. Plaintiff also acquiesced to their retention long after the alleged removal. Defendant has met the evidentiary burden for her affirmative defenses.

**ACORDINGLY**, the Petition must be DENIED.

Respectfully submitted this 8th of February 2023.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been filed electronically with the Clerk of the Court by using the CM/ECF system on February 8, 2022.


/s/**Martha E. Aristizabal**
**MARTHA E. ARISTIZABAL, ESQ.**
Florida Bar Number: 1003190
**BUSCIGLIO SHERIDAN SCHOEB**
3302 North Tampa Street
Tampa, Florida 33603
martha@mytampafirm.com
(813) 225-2695 telephone
(813) 868-3695 facsimile
*Counsel for Defendant*
**DANUTA WATSON**

/s/**Scott L. Robbins**
**SCOTT L. ROBBINS, ESQ.**
Florida Bar Number 0352111
**BUSCIGLIO SHERIDAN SCHOEB**
3302 North Tampa Street
Tampa, Florida 33603
scott@mytampafirm.com
(813) 225-2695
(813) 868-3695
*Counsel for Defendant*
**DANUTA WATSON**